UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| RHONDA SUE SHORT § | |
| § | |
| Plaintiff. § | |
| § | |
| VS. § | CIVIL ACTION NO. 3:18–CV–00133 |
| § | |
| NANCY A. BERRYHILL, ACTING § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Rhonda Sue Short ("Short") seeks judicial review of an administrative decision denying her disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, and for supplemental security benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*

All dispositive pretrial motions in this case have been referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Dkt. 6. Before the Court are competing motions for summary judgment filed by Short and Defendant Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration (the "Commissioner"). Dkts. 16 and 18. Having considered the motions, responsive briefing, record, and applicable law, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 16) be **DENIED**, Defendant's Motion for Summary Judgment

and Response to Plaintiff's Motion for Summary Judgment (Dkt. 18) be **GRANTED**, and the decision of the Administrative Law Judge ("ALJ") be **AFFIRMED**.

## BACKGROUND

Short filed a claim for social security disability benefits under Title II and Title XVI of the Act, alleging disability as of December 20, 2013. Short's applications were initially denied and denied again upon reconsideration. Subsequently, an ALJ held a hearing and found Short was not disabled. Short filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final. This appeal followed.

## APPLICABLE LAW

Under the Act, individuals who have contributed to the program and have a physical or mental disability may apply for disability insurance benefits. *See* 42 U.S.C. § 423. The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard, and (2) the Commissioner's factual findings are supported by substantial evidence. *See Garcia v. Berryhill*, 800 F.3d 700, 704 (5th Cir. 2018). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance." *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987) (citation omitted). "If the Commissioner's findings are supported by substantial evidence, they must be affirmed." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

"Procedural perfection in administrative proceedings, however, is not required." *Jones v. Colvin*, 638 F. App'x 300, 303 (5th Cir. 2016) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)) (internal quotation marks omitted).

"[A] claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (internal quotation marks, emphasis, and citation omitted). To determine if a claimant is disabled, the ALJ uses a sequential, five-step approach:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

"The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond*, 892 F.3d at 817 (citation omitted). "Before reaching step four, the Commissioner assesses the claimant's residual functional capacity ('RFC'). The claimant's RFC assessment is a determination of the most the claimant can still do despite his or her physical and mental limitations and is based on all relevant evidence in the claimant's record. The RFC is used in both step four and step five to determine whether the claimant is able to do her past work or other available work." *Kneeland*, 850 F.3d at 754 (internal quotation marks and citations omitted).

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's final decision. *See Newton*, 209 F.3d at 455. *Post hoc* rationalizations for an agency decision are not to be considered by a reviewing court. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). "The reviewing court may not reweigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. Conflicts in the evidence are for the Commissioner, not the courts, to resolve." *Pennington v. Comm'r of Soc. Sec. Admin.*, No. 3:16-CV-230, 2017 WL 4351756, at *1 (S.D. Tex. Sept. 29, 2017) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).

## THE ALJ'S DECISION

The ALJ found at step one that Short had not engaged in substantial gainful activity since December 20, 2013.

The ALJ found at step two that Short had the following severe impairments: diabetes mellitus, peripheral neuropathy, chronic kidney disease, affective disorders (bipolar and depression), anxiety (panic disorder without agoraphobia), and status post left knee amputation.

At step three, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of step four, the ALJ assessed Short's RFC, as follows:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can stand/walk four of eight hours per workday, occasionally push and pull with the left lower extremity, occasionally operate foot controls with the left lower

4

extremity, occasionally climb ramps and stairs but never climb ropes, ladders, or scaffolds, and occasionally balance, and must avoid exposure to unprotected heights, vibrating surfaces, and uneven surfaces. The claimant must be allowed to use an assistive device such as a cane. The claimant can understand, remember, and carry out detailed but not complex job instructions.

Dkt. 11-3 at 25. At step four, based on this RFC, the ALJ found that Short is unable to perform any past relevant work. At step five, the ALJ considered Short's age, education, work experience, and RFC in conjunction with the Medical Vocational Guidelines and the testimony of a vocational expert to determine if there was any other work she could perform. At the time of the ALJ's hearing, Short was 39 years old with a high school education. The ALJ determined that transferability of job skills was not material in the determination of disability. The ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate." *Id.* at 31.

## DISCUSSION

This appeal raises three issues: (1) whether the ALJ failed to properly weigh the opinion of examining physician Ross E. Keiser, Ph.D. ("Dr. Keiser"); (2) whether the ALJ failed to properly weigh the opinion of treating source Maureen Biggs, Doctor of Nursing Practice ("DNP Biggs"), when determining Short's RFC; and (3) whether the ALJ properly developed the record. The Court addresses each issue in turn.

A. **OPINION OF EXAMINING PHYSICIAN**

Short argues that the ALJ erred when she afforded "some weight" to Dr. Keiser's opinion and that "[i]f Dr. Keiser's opinion [was] weighted with Plaintiff's continued difficulty in mind, his opinion of significantly impaired abilities to make occupational and personal adjustments would result in a different RFC." Dkt. 17 at 19. The Commissioner responds that "the ALJ gave specific, legitimate reasons for giving some weight to Dr. Keiser's opinion . . . [n]othing more was required." Dkt. 18 at 7.

**Requirements for Giving Weight to Examining Physicians:** Federal regulations create a broad framework for ALJs to follow in making their decisions in social security disability cases. *See* 20 C.F.R. § 404.1527. The regulations and applicable caselaw make a clear distinction between the deference given to a medical opinion from a treating physician as contrasted with a medical opinion from an examining physician.

A treating physician's opinion regarding the severity and nature of a plaintiff's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175–76 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)). Generally, "[o]pinions of acceptable medical sources that are not treating sources [—such as examining physicians—] are not provided with the same 'considerable weight' as treating sources, but such medical opinion evidence is still entitled to weighing and evaluation." *Ihde v. Colvin*, 270 F. Supp. 3d 956, 964 (W.D. Tex. 2017). (citations omitted). Put another way, the "standard of deference to the examining physician is contingent upon the physician's ordinarily greater familiarity with the

6

claimant's injuries . . . [W]here the examining physician is not the claimant's treating physician and where the physician examined the claimant only once, the level of deference afforded his opinion may fall correspondingly." *Rodriguez v. Shalala*, 35 F.3d 560, 1994 WL 499764, at *2 (5th Cir. 1994) (citing *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

"A hearing officer demonstrates that he properly weighed the evidence where he gives 'specific reasons,' in accordance with the weight factors, for assigning an examining physician's evidence a particular weight." *Ihde*, 270 F. Supp. 3d at 964 (citing *Pradia v. Colvin*, No. 3:15-CV-00036-RFC, 2017 WL 28088, at *5 (W.D. Tex. Jan. 3, 2017)). There is not, however, a requirement for "detailed analysis." *Pradia*, 2017 WL 28088, at *5. The ALJ is free to reject the medical opinion of any physician when the evidence supports a contrary conclusion. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). Moreover, "[w]hen a treating or examining physician's opinions are inconsistent with other substantial evidence in the record, the opinions are not entitled to any specific weight in the ALJ's decision." *Smith v. Comm'r of Soc. Sec. Admin.*, No. 4:12-CV-00625-DDB, 2014 WL 4467880, at *3 (E.D. Tex. Sept. 9, 2014) (citation omitted).

**ALJ's Reasons for Assigning Dr. Keiser's Opinion Little Weight**: Dr. Keiser examined Short at the Social Security Agency's request on July 21, 2015, and completed a seven-page consultative examination report. The ALJ considered Dr. Keiser's opinion, generally finding that it was entitled to "some weight." The ALJ explained:

> As for the opinion evidence, the undersigned gives some weight to the opinion of the consultative examiner regarding occupational and personal adjustments being significantly impaired (Exhibit 5F), although the later

7

> treatment records show that the claimant's bipolar disorder and anxiety are stable with medication, and that her mental status is normal.

Dkt. 11-3 at 30. Because Dr. Keiser is an examining physician,[1] the ALJ must consider the examining physician's opinion and decide the appropriate weight that should be afforded to the opinion. *See Ihde*, 270 F. Supp. 3d at 964 ("such medical opinion evidence is still entitled to weighing and evaluation"). Here, the ALJ clearly outlined Dr. Keiser's findings and opinion and provided an explanation as to why he gave some weight to Dr. Keiser's opinion—the ALJ determined that a more recent mental status examination indicated that Short's mental impairments were normal and she reported her bipolar disorder and anxiety were stable with medication.

Short argues that Dr. Keiser's opinion contradicts the ALJ's RFC determination. This argument goes to the ALJ's consideration of Dr. Keiser's opinion. This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *See Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985). The Court finds that substantial evidence supports the ALJ's decision to afford Dr. Keiser's opinion "some weight." The ALJ appropriately considered Dr. Keiser's opinion and the ALJ did not commit error in her consideration of Dr. Keiser's opinion.

---

[1] A consultative physician is a physician designated and employed to make medical judgments by the Social Security Administration. *See* 20 C.F.R. § 404.1526(d). A consultative physician may personally examine the claimant. *See id.*

B.   **OPINION OF OTHER MEDICAL SOURCES**

Short claims that, when determining her RFC, the ALJ failed to consider the opinion of treating source DNP Biggs. Short argues that the "ALJ's failure to weigh the opinion of treating source [DNP Biggs]" amounts to harmful error. Dkt. 19 at 1.

**Requirements for Giving Weight to Other Medical Sources:** Federal regulations applying to claims filed before March 27, 2017 classify evidence from medical sources into two categories: acceptable medical sources and other sources. *See* 20 C.F.R. § 416.927. Acceptable medical sources include licensed physicians and certain other listed medical practitioners, but not nurse practitioners. *See Ihde*, 270 F. Supp. 3d at 962. Only acceptable medical sources may provide medical opinions. *See id.* "Where 'other sources,' such as nurse practitioners, have provided opinion evidence, evaluators should compare their opinion evidence against the available medical opinion evidence." *Id.* (citation omitted). An ALJ, however, is not required to rely on the opinion evidence of other sources. *See Porter v. Barnhart*, 200 F. App'x 317, 319 (5th Cir. 2006) ("At the outset, the ALJ was not required to rely on the [other medical source's] evaluation in making the RFC finding because [the other medical source] is not an acceptable medical source.").

Where other sources, such as nurse practitioners, have provided opinion evidence, Social Security Ruling 06-03p provides specific guidance for how these opinions should be evaluated:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or

9

> subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). However, there is no requirement that the ALJ explain her reasoning when she accords greater weight to the opinion evidence of an acceptable medical source than the opinion evidence of other sources. *See Ihde*, 270 F. Supp. 3d at 962.

**DNP Biggs's Mental Capacity Assessment:** On May 5, 2015, Short's treating nurse practitioner, DNP Biggs, completed a Mental Capacity Assessment. In this Mental Capacity Assessment, DNP Biggs was asked to respond to twenty questions regarding Short's ability to function. DNP Biggs indicated Short has the following "marked"[2] limitations:

- The ability to understand and remember detailed instructions.
- The ability to carry out detailed instructions.
- The ability to maintain attention and concentration for <u>extended</u> periods.
- The ability to work in coordination with or in proximity to others without being distracted by them.
- The ability to accept instructions and respond appropriately to criticism from supervisors.
- The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.
- The ability to travel in unfamiliar places or use public transportation.

Dkt. 11-10 at 59–61.

---

[2] "There is a serious limitation in this area. The individual cannot generally perform satisfactorily in this area." Dkt. 11-10 at 59.

Short argues that the ALJ erred because she "does not mention DNP Biggs'[s] name at any point." Dkt. 17 at 20. The Court acknowledges that the ALJ did not discuss DNP Biggs's Mental Capacity Assessment. However, the ALJ prefaced her RFC determination with the phrase: "[a]fter careful consideration of the entire record." Dkt. 11-3 at 25. The ALJ then stated she "also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." *Id.* These statements, coupled with the hearing transcript,[3] strongly indicate that the ALJ considered the entire record including the medical opinions supporting Short's mental health impairments. *See, e.g., Robinson v. Colvin*, 2017 WL 3493267, at *4 (S.D. Tex. Aug. 14, 2017) (finding that although the ALJ did not mention the physician assistant's opinion, the hearing transcript and ALJ's decision show the opinion was considered).

**Harmless Error:** Even if the ALJ erred by not discussing DNP Biggs's Mental Capacity Assessment, the Court must determine whether the error was harmless. "In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *McNeal v. Colvin*, No. 3:11-CV-02612-BH-L, 2013 WL 1285472, at *27 (N.D. Tex. Mar. 28, 2013) (citations omitted).

Here, in determining Short's RFC, the ALJ relied on a myriad of medical treatment notes, the opinions of Dr. Keiser and the state agency psychologists, and Short's hearing testimony. Importantly, DNP Biggs's medical treatment notes were among those considered by the ALJ. Indeed, the ALJ specifically cited DNP Biggs's medical treatment

---

[3] At the hearing, the ALJ referenced notes from DNP Biggs and asked specific questions regarding Short's mental health impairments.

notes dated September 6, 2015 and May 5, 2015 in her decision. *See* Dkt. 11-3 at 27. Regarding Short's mental health, the ALJ specifically discussed the July 2015 findings of Dr. Keiser, as well as the mental impairments Short described at the hearing. In the end, the ALJ found that Short has the severe impairments of affective disorders (bipolar and depression) and anxiety (panic disorder without agoraphobia), but she noted in discounting Dr. Keiser's opinion that "a recent mental status examination [dated August 2016] was normal, and the claimant reported that her bipolar disorder and anxiety were stable with medication." Dkt. 11-3 at 30. As mentioned above, DNP Biggs's Mental Capacity Assessment was completed in May 2015, making it older than Dr. Keiser's opinion. Given that the ALJ specifically discounted Dr. Keiser's opinion based on later treatment notes, it is implausible that the ALJ's decision would change based on DNP Biggs's even older Mental Capacity Assessment.[4] In sum, based on the totality of the circumstances, the Court finds that even if the ALJ failed to consider DNP Biggs Mental Capacity Assessment, the error is harmless.

## C.  DUTY TO FULLY AND FAIRLY DEVELOP THE RECORD

Next, Short contends that the ALJ should have obtained additional evidence about her physical impairments. She argues that the "only physical capacity opinions were the non-examining opinions of the State Agency consultants" and that substantial evidence

---

[4] The Mental Capacity Assessment is primarily a "check-box" questionnaire that is not specifically supported by any treatment notes. Thus, it is dubious whether the questionnaire could have had any impact on the ALJ's decision due to its conclusory nature. *See, e.g., Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (finding that an opinion in the questionnaire format was properly given little weight "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations.").

does not support the ALJ's RFC determination. Here, Short contends that the ALJ should have sought out additional reports from a consultative examiner or medical expert. The Court disagrees.

**Legal Standard:** "To determine whether the ALJ fully and fairly developed the record, we ask whether the record contained sufficient evidence for him to make an informed decision." *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)). "So long as such evidence exists, the ALJ need not have supplemented the record with additional evidence." *Id.* (citing 20 C.F.R. §§ 404.1516, 416.916; *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir.1989)). While the claimant bears the burden of proving her disability by establishing a physical or mental impairment, the ALJ may order a consultative examination to develop a full and fair record. *See Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (citation omitted). This decision is discretionary. *See id.* "Reversal of [an ALJ's] decision, however, is appropriate only if the applicant shows that [s]he was prejudiced." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citation omitted). "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* at 557 n.22 (citation omitted).

**The Record Before the ALJ:** Short submitted over 1,000 pages of medical treatment notes into the record before the ALJ. This is not a case where there is a pro se claimant or a sparse record. Here, there is sufficient evidence in the record for the ALJ to make her determination regarding Short's physical impairments. The ALJ summarized

13

recent medical records from both UTMB Health and Saint Vincent's Hope Clinic in her decision. The ALJ also noted that on September 6, 2015, Short "was doing well;" "[t]he review of symptoms was otherwise negative;" and "[t]he physical examination was normal." Dkt. 11-3 at 27.

Moreover, while Short requested DNP Biggs complete a Mental Capacity Assessment for her social security application, the Court notes that Short did not request DNP Biggs fill out a questionnaire regarding Short's physical limitations. Short has not presented any additional evidence demonstrating that had the ALJ fully developed the record, the ALJ would have come to a different conclusion. *See Ripley*, 67 F.3d at 557. The Court finds that substantial evidence supports the ALJ's decision because the record contained sufficient evidence for the ALJ to make an informed decision. *See Hernandez*, 269 F. App'x at 515.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 16) be **DENIED**, Defendant's Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment (Dkt. 18) be **GRANTED**, and the decision of the Administrative Law Judge ("ALJ") be **AFFIRMED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 14th day of February, 2019.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE